## Commonwealth, Appellant, *v.* Nastari et al.

Submitted November 11, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Louis R. Paulick* and *Robert L. Eberhardt,* Assistant District Attorneys, *John M. Tighe,* First Assistant District Attorney, and *John J. Hickton,* District Attorney, for Commonwealth, appellant.

*Irving M. Green* and *David O'Hanesian,* for appellees.

OPINION BY HOFFMAN, J., February 27, 1975:

The Commonwealth appeals from the order of the lower court that suppressed evidence seized by the police from appellees' vehicle.

On December 20, 1971, at 1:55 a.m., two armed men committed a robbery in the North Versailles Bowl, a bowling alley in North Versailles Township, Allegheny County. The police were notified immediately. At 2:06 a.m., the Huntington Township police transmitted a radio broadcast which indicated that the robbery suspects, two white males between 35 and 40 years old, were headed towards North Huntington Township in a light-colored Volkswagen and that the suspects were armed. Lieutenant John Cimprich of the North Huntington Township Police Department heard the broadcast while he was sitting in his police car in a service station parking lot on Route 30, approximately one mile from the bowling alley. Immediately prior to the broadcast, the lieutenant had observed two men traveling at a slow rate of speed in a light-colored Volkswagen. There was little traffic on the highway because of the early hour of the morning; the lieutenant was able to observe the men clearly because the roadway was well-lit from the nearby service station. After the broadcast, and less than fifteen minutes after the robbery, the lieutenant notified his partner, Officer Richard Keeler, on patrol in a separate vehicle one mile east on Route 30, that the robbery suspects were approaching Keeler's location.

Officer Keeler spotted the VW immediately and followed the automobile as the driver turned off the main road. After Lieutenant Cimprich had caught up with the VW, Officer Keeler signaled for the suspects to pull off the roadway. While the lieutenant was talking with the operator of the vehicle, Officer Keeler shined a spotlight through the window on the operator and on the back seat of the automobile. With the aid of the flashlight, the officer saw a green bank bag and a large screw driver visible in a black gym bag. The subsequent search revealed two pistols and the money taken in the robbery.

Appellees were subsequently arrested and indicted on charges of armed robbery, violation of the Uniform

Firearms Act and burglary; appellee Nastari was additionally charged with pointing a firearm. Appellees thereafter filed a motion to suppress the physical evidence discovered in the gym bag. After a hearing on December 18, and 19, 1973, the court below granted the appellees' motion. The Commonwealth appealed that order on January 22, 1974.[1]

The Commonwealth concedes that the police must meet the requirements of the Fourth Amendment of the United States Constitution when they conduct an investigatory stop of an automobile. That is the clear holding of two recent Pennsylvania Supreme Court cases. *Commonwealth v. Boyer*, 455 Pa. 283, 314 A. 2d 317 (1974)·; *Commonwealth v. Swanger*, 453 Pa. 107, 307 A. 2d 875 (1973). As stated in *Swanger*, "[a]n automobile is a place where an individual has a reasonable expectation of privacy .... Moreover, when a police officer stops a vehicle he has 'seized' the vehicle and its occupants, and thus, the protections of the Fourth Amendment must be considered....." 453 Pa. at 111, 307 A. 2d at 877. There is some confusion concerning what level of suspicion the police must have before an automobile may

---

1. This Court has jurisdiction to hear this appeal under the authority of *Commonwealth v. Bosurgi*, 411 Pa. 56, 63-64, 190 A.2d 304 (1963) : "From the point of view of the Commonwealth, two possible situations may arise: (a) the order of suppression will result in a termination and conclusion of the prosecution or (b) while the order of suppression will not result in a termination or conclusion of the prosecution, it will result in a prosecution wherein the Commonwealth is substantially handicapped because it cannot present *all* its available evidence . . . In *both* factual situations the practical effects of an order granting the suppression of evidence give to the order such an attribute of finality as to justify the grant of the right of appeal to the Commonwealth in both situations." See also, *Commonwealth v. Pugh*, 223 Pa. Superior Ct. 112, 296 A.2d 864 (1972) ; *Commonwealth v. Manduchi*, 222 Pa. Superior Ct. 562, 295 A.2d 150 (1972). The suppression of the physical evidence in the instant case is a sufficient handicap to the Commonwealth's case to permit an appeal from the lower court's order.

be stopped. See, e.g., Comment, 47 Temp. L.Q. 640 (1974). *Swanger* suggests that before a stop can be made the police must have probable cause: "We, therefore, hold before a police officer may stop a single vehicle to determine whether or not the vehicle is being operated in compliance with The Vehicle Code, he must have probable cause based on specific facts which indicate to him either the vehicle or the driver is in violation of the code." at 115, 307 A. 2d at 879. On the other hand, in cases not involving automobile stops, the law is clear that something less than probable cause justifies the brief detention of a suspect: ". . . there is nothing unconstitutional about the brief detention of an individual, under circumstances not justifying arrest, for the purpose of investigating possible criminal activity." *Commonwealth v. Smith,* 225 Pa. Superior Ct. 509, 512, 311 A. 2d 716 (1973). The leading case on such investigatory stops and limited searches is *Terry v. Ohio,* 392 U.S. 1 (1967), which has recently been interpreted by the United States Supreme Court in *Adams v. Williams,* 407 U.S. 143 (1972), as follows: "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. . . . A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." 407 U.S. at 145-46.

In *Commonwealth v. Boyer,* supra, a case decided after *Swanger,* our Supreme Court reiterated the probable cause requirement for police investigatory stops. Further, the Court rejected the Commonwealth's claim that the search of the appellant was justified by *Terry. Boyer* involved a vehicle stop that was based solely on

the "unusual look" that appellant gave the police as he drove past a patrol car. Although the Court rejected the Commonwealth's argument, the Court impliedly accepted the view that a stop of a vehicle might be justified on the basis of a reasonable suspicion rather than on probable cause: "Nor can the stopping of appellant's vehicle be justified under the rule laid out in *Terry v. Ohio* . . . since the 'unusual look' given by appellant did not constitute 'unusual conduct which [led the officer] reasonably to conclude in light of his experiences that criminal activity may be afoot. . . .'" 455 Pa. at 286, 314 A. 2d at 318. See also, *Commonwealth v. DeJesus*, 226 Pa. Superior Ct. 79, 310 A. 2d 323 (1973). The police excess condemned in the *Swanger-Boyer* line of cases was carefully delineated in *Swanger:* ". . . we emphasize the only issue here involved is whether a police officer may stop a single automobile *without any outward sign of a violation of The Vehicle Code.*" 453 Pa. at 110, 307 A. 2d at 877. (Emphasis added).. In addition, the Court in *Swanger* employed a balancing test whereby reasonableness of a search was to be judged by the degree of intrusion upon a citizen's protected interest as contrasted to the extent of the governmental interest in conducting the search.

Therefore, there is no logical basis to distinguish pedestrians who may be detained briefly for further investigation and persons riding in automobiles when the police have a reasonable suspicion of criminal activity. In either situation, when the police have a reasonable suspicion that criminal activity is afoot and that the suspect is armed and dangerous, the police may temporarily detain the individual and conduct a limited search sufficient to insure their safety and the safety of third persons. Cf. *Terry,* supra; *Commonwealth v. Pegram,* 450 Pa. 590, 301 A. 2d 695 (1973) ; *Commonwealth v. Hicks,* 434 Pa. 153, 253 A. 2d 276 (1969) ; *Commonwealth v. Watkins,* 222 Pa. Superior Ct. 146, 292 A. 2d 505 (1972).

The basis for the stop in the instant case satisfied the requirements of the Fourth Amendment. The police were informed that the suspects had fled in a light-colored VW. In addition, the police had a partial description of the robbers and the direction in which they were thought to be going. The traffic on the highway was extremely light because of the hour of the night at which the crime took place. The car was stopped almost immediately after the crime and in the immediate vicinity of the incident. Although the police observed nothing unusual about the operation of the vehicle, the vehicle and its occupants sufficiently resembled suspects in the armed robbery to justify a limited investigatory stop. The police at the moment of the stop did not have probable cause to arrest;[2] they did have sufficient suspicion to stop the vehicle to investigate the crime. Therefore, the officers were justified in using the flashlight because they were legally situated outside the car. In a similar situation, this Court

2. The Commonwealth in the instant case contends that probable cause existed at the time of the stop. The argument is based on *Chambers v. Maroney*, 399 U.S. 42 (1970). The facts in *Chambers* are similar to those in the present case: police stopped the appellant's car on the basis of a tip from teenagers who had seen "a light blue compact station wagon" speeding from the scene of a late night armed robbery of a gas station attendant. The only other information given the police was that one robber wore a green sweater and that another wore a trench coat. Within an hour of the crime and in the same vicinity, the police stopped appellant's car and observed that he was wearing a green sweater. The subsequent search revealed the weapon used in the robbery and the money taken from the attendant. The Court passed quickly over the question of whether the police had probable cause and did not analyze the point at which the police had sufficient cause to arrest. A close reading of the case suggests that probable cause to arrest did not exist until after the stop was made because the clothing worn by the suspects was critical to their arrest and was not observed by the police until after the initial investigatory stop of the vehicle. Therefore, *Chambers* supports the notion that a brief investigatory stop of a vehicle may be made on less than probable cause.

held that the plain view doctrine[3] applied even if an officer was assisted by the use of a flashlight. *Commonwealth v. DeJesus,* supra. Further, the use of the flashlight was a minimal intrusion into an area of privacy of the appellees when balanced against the police officer's need to guarantee his safety. Here Officer Keeler knew that the appellees were suspects in an armed robbery; the area of the car in which he shined the light was within the reach of the appellees. Therefore, the minimal invasion was justified under *Terry.* Once the officer saw contraband in the back seat, probable cause existed to arrest the appellees and to seize the contents of the gym bag.

The order of the court below is reversed and the case is remanded for further proceedings consistent with this opinion.

CERCONE and PRICE, JJ., concur in the result.

---

3. See *Coolidge v. New Hampshire,* 403 U.S. 443 (1971); Belsky, *Criminal Procedure in Pennsylvania,* 78 Dick L. Rev. 209, 250-51 (1973).