363 A.2d 1299

COMMONWEALTH of Pennsylvania,
Appellant,

v.

George JANEK.

Superior Court of Pennsylvania.

Sept. 27, 1976.

Gailey C. Keller, Bloomsburg, for appellant.

Thomas Arthur James, Jr., Berwick, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

On July 1, 1974, appellee George Janek and a companion, a minor, were arrested by Pennsylvania State Policemen John Parcell and John Freed, while leaving a field belonging to Janek's mother, Mrs. Lillian Sukup. The field was not visible from the nearest public road, and was posted with "No Trespassing" signs signed by Mrs. Sukup's husband. The field contained a tent, various gardening implements, approximately two hundred live marijuana plants, and a five or ten pound can of Miracle Grow fertilizer. Appellee was charged with pos-

session with intent to manufacture or deliver drugs, and with unlawful possession of a controlled substance. Appellee filed a timely motion to suppress all evidence obtained by the police in connection with the arrest, which motion was granted by the lower court on June 5, 1975. The Commonwealth took this direct appeal to our Court from the lower court's Order granting the suppression motion. We find that the lower court erred in granting the motion, and we reverse.

Appellee argues that the police were unlawfully on his mother's property, and that all evidence discovered by the police while there should be inadmissible against him. We disagree. In *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), federal revenue agents on private land without a search or arrest warrant, observed petitioner Charlie Hester drop a jug of moonshine. The Supreme Court stated: "It is obvious that even if their had been a trespass, the above testimony was not obtained by an illegal search or seizure. The defendant's own acts, and those of his associates, disclosed the jug, the jar, and the bottle—and there was no seizure in the sense of the law when the officers examined the contents of each after it had been abandoned. . . . The only shadow of a ground for bringing up the case is drawn from the hypothesis that the examination of the vessels took place upon Hester's father's land. As to that, it is enough to say that, apart from the justification, the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to the open fields." 265 U.S. at 58–59, 44 S.Ct. at 446. *Hester* has not been overruled, and in fact has been cited by the Supreme Court in recent cases, including *Air Pollution Variance Board v. Western Alfalfa*, 416 U.S. 861, 865, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974). We believe that the situation in the case before us is essentially the same as the situation in *Hester*, and we find that officers Parcell

and Freed were justifiably in position to observe the illegal acts and to seize the marijuana and gardening implements.

Even if we were to conclude that *Hester* is distinguishable from the case before us, or that it no longer has legal validity in light of *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), (the conclusion drawn by the lower court in granting appellee's suppression motion), we find that the police were on the property with the consent of the husband of the record owner, and we would still find it necessary to reverse. In *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), the joint user of a duffel bag gave permission to police officers to search the bag. The resulting search disclosed evidence which was used to convict the owner of the bag of second degree murder. The Supreme Court held that the joint user of the bag "clearly had authority to consent to its search," and that the petitioner "assumed the risk that [the joint user] would allow someone else to look inside." 394 U.S. at 740, 89 S.Ct. at 1425. In the case before us, appellee's step-father, a person married to and residing with the record owner of the property, requested that the police check the property in question in order to prevent further vandalism. Although the record owner of the property testified that she had not consented at any time to the presence of the police on the property, and that to the best of her knowledge her husband had never given any consent, the woman also testified, in apparent contradiction: "[a]fter the fire, we were refused protection by the State Police." State Police Officer Terry Seiple testified at the suppression hearing that in 1970 or 1971 he had had at least six conversations with Mr. Sukup, in which the latter specifically requested that the State Police check the property in question for the purpose of preventing further acts of vandalism. Although the requests had been made three or four years prior to appellee's arrest, since the Sukups

had moved away and were no longer able to personally keep an eye on the property, and since the perpetrators of the vandalism had never been apprehended, the police were certainly justified in checking the property from time to time. Mr. Sukup did not appear at the suppression hearing to contradict the testimony of Officer Seiple, and we find that the latter's testimony that he had been requested by Mr. Sukup to check the property was sufficient to establish that the police were legally in a position to observe any illegal activity that was taking place there.

■ "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris v. United States,* 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968). "The only requirement for the plain view doctrine is that the officer must have had the right to be in the position to have the view." *Commonwealth v. Clelland,* 227 Pa. Super. 384, 323 A.2d 60 (1974). We find that the police in this case were legally justified in being on the property in question. The police officers observed appellee with mud on his clothes and gardening implements nearby, in a field which they knew contained marijuana plants; they therefore had probable cause to believe that they were observing appellee in the commission of a crime, and were legally justified in making a warrantless arrest. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed. 2d 142 (1964); *Commonwealth v. Murray,* 437 Pa. 326, 263 A.2d 886 (1970); *Commonwealth v. Tookes,* 236 Pa. Super. 386, 344 A.2d 576 (1975). Evidence obtained from appellee's person, or which is otherwise "fruit" of the arrest is therefore admissible. *Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); *Commonwealth v. Tookes, supra.*

The Order of the lower court granting the motion to suppress is reversed.

HOFFMAN, J., files a dissenting opinion in which SPAETH, J., joins.

HOFFMAN, Judge (dissenting).

The Commonwealth, appellant herein, contends that the lower court erred when it granted appellee's motion to suppress. The Majority relies on alternative grounds to reverse the lower court: (1) that no warrant was required because the contraband was discovered in an "open field," *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); and, (2) that the police were on the property pursuant to a valid consent of the owners. I disagree and would affirm.

On June 10, 1974, Pennsylvania State Trooper John Parcell received a radio call, directing him to meet a second trooper on Township Route T436, Mt. Pleasant Township, Columbia County. The troopers were to investigate a report from an anonymous informant that someone was cultivating marijuana in a field located on a farm owned by one Mrs. Martin Sukup. The troopers followed Route T436, a single lane unpaved road, to a farm road on the Sukup property. The Sukup fields which abutted Route T436 had high banks, were posted at regular intervals, and were surrounded by barbed wire fences. The troopers were not certain who owned the field, but assumed that it was Mrs. Sukup.

The troopers entered the field, walked about one hundred yards into the field, and found an unoccupied tent and several plots of plants. One of the officers removed a number of leaves and, subsequently, forwarded them to the State Police Laboratory for chemical analysis.

From June 10, until July 1, the State Police conducted a periodic surveillance to determine who was responsible for the marijuana crop. On July 1, Troopers Parcell and Freed learned that a vehicle with New Jersey license plates was parked near the field. After they arrived at the Sukup farm, they noticed appellee, Mrs. Sukup's son,

and a juvenile who had apparently been working on the marijuana crop. At that point, appellee was arrested; the subsequent search netted tools and fertilizer used to cultivate the plants, and some harvested marijuana.

Appellee filed a motion to suppress. After a hearing, the lower court granted the motion on June 5, 1975.

Initially, the Majority holds that the police were not required to obtain a warrant because the search occurred in an "open-field." and was thus beyond the protection of the Fourth Amendment: "In *Hester v. United States*, [supra], federal revenue agents on private land without a search or arrest warrant, observed petitioner Charlie Hester drop a jug of moonshine. The Supreme Court stated: 'It is obvious that even if there had been a trespass, the above testimony was not obtained by an illegal search or seizure. . . . As to that, it is enough to say that, apart from the justification, the special protection accorded by the Fourth Amendment to the people in their "persons, houses, papers, and effects" is not extended to the open fields.' 265 U.S. at 58–59, 44 S.Ct. 445, at 446." at 1300.

In 1970, the continued vitality of the "open field" doctrine was raised in this Court. *Commonwealth v. Robbins*, 216 Pa.Super. 233, 263 A.2d 761 (1970). The Majority affirmed per curiam. In a concurring opinion, I noted that "[s]ince the search was conducted before December 18, 1967, I would not decide whether appellant's reasonable expectation of privacy in the wooded area, *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed. 2d 576 (1967), was violated by the instant search. . . . We must apply, therefore, the prior rule of law set forth in *Hester v. United States*, [supra]." 216 Pa. Super. at 234–35, 263 A.2d at 761–762 (HOFFMAN, J., concurring). Although the issue has not been squarely addressed by the United States Supreme Court, our Supreme Court has recently cited the open field doctrine with approval. *Commonwealth v. Treftz*, 465 Pa. 614,

351 A.2d 265 (1976). *Treftz,* in part, was decided under a *Katz* rationale: ". . . the Court has been concerned with seeking to answer in any given case whether or not the facts are such as to warrant a finding that the defendant had a 'reasonable expectation of privacy.' 'The Fourth Amendment protects *people,* not places.' *Katz v. United States,* [supra] . . ..

". . . [W]e believe that the interest appellant Treftz asserts today, that of an occasional and transient visitor to the Gilkey farmhouse, who last visited the premises three weeks prior to the illegal search, and who had no remaining personal belongings on the property, falls well below the legal standards to justify any reasonable expectation of privacy . . . ." 465 Pa. at 623, 351 A. 2d at 269. In addition, however, the Court noted that ". . . it is by no means insignificant to our analysis that the evidence sought to be suppressed, . . ., was discovered in a wooded area 148 yards from the rear fence line which separates the dwelling area, including a cleared yard, from this backwoods area open to hunters. Although the United States Supreme Court decision in *Hester v. United States,* [supra], pre-dated the current legal search and seizure inquiry, *Katz* lent implicit support to the 'open fields' doctrine." 465 Pa. at 626, 351 A. 2d at 270.[1]

Even if "open fields" do not come within the ambit of the Fourth Amendment, that does not end our inquiry in the instant case. Exceptions to the open field doctrine have been framed since *Hester.* See, generally, *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564 (1971). One specific exception is that an occupier

---

1. The Court cited *Katz v. United States,* supra, 389 U.S. at 351, n. 8, 88 S.Ct. at 511, as authority for its position: "In support of their respective claims, the parties have compiled competing lists of 'protected areas' for our consideration. It appears to be common ground that a private home is such an area, *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, but that an open field is not. *Hester v. United States,* [supra]."

348

of land has a protected privacy right in the curtilage. Cf. *Wattenburg v. United States*, 388 F.2d 853 (9th Cir. 1968). Some courts have also analyzed the purpose of the police incursion onto the individual's property, rather than adhering to the common law curtilage analysis. Thus, "[i]n *United States v. Davis*, 5 Cir. 1970, 423 F.2d 974, Judge Gewin set out the ground rule for determining the applicability of the 'plain view' rule: the question to be addressed is 'whether the observing officer had "a right to be in the position to have that view." ' *Id.* at 977. When a law enforcement agent trespasses solely to unearth evidence of crime, he has no 'right to be in the position to have that view.' As Judge Gewin stated, '[w]here police officers trespass *in order to secure the view*, we have not hesitated to find a search.' (Emphasis added). Id." *United States v. Holmes*, 521 F.2d 859, 869 (5th Cir. 1975), rehearing en banc granted, 525 F.2d 1364.

I believe that the instant case represents another exception to the "open field" doctrine. Appellee was the son of the owner of the land.[2] The field in which he planted marijuana was surrounded by embankments and barbed wire fences. The land was posted to give notice to all who would trespass that the owner intended to protect his privacy. That is, although we are dealing with a field, it was not an open one, inviting casual intrusion.[3] Further, as in *United States v. Holmes*, supra, the police

2. Thus, appellee has standing to raise the issue. See *Commonwealth v. White*, 459 Pa. 84, 327 A.2d 40 (1974) cert. denied, 421 U.S. 971, 95 S.Ct. 1967, 44 L.Ed.2d 461 (1975); *Commonwealth v. Weeden*, 457 Pa. 436, 322 A.2d 343, cert. denied, 420 U.S. 937, 95 S.Ct. 1147, 43 L.Ed.2d 414 (1975).

3. Cf. Comment, Model Penal Code, § 221.2 (Proposed Draft, 1962): " . . . most people have no objection to strangers tramping through woodland or over pasture or open range; but a building is generally intended to keep out persons not licensed by the owner . . . . The theory of Section [221.2] is that where a landowner wishes to assert his right to exclude from open land and to have the backing of the criminal law, it is not too much to ask him to give notice."

incursion was not happenstance; rather, it was a deliberate attempt to collect evidence. Thus, I would hold that the Sukup field was not an open field and that appellee had preserved his fourth amendment rights.

The Majority also holds that, even if the field were within the ambit of the Fourth Amendment, Mr. Sukup had consented to the search. I agree that Mr. Sukup's intelligent and knowing consent could have been binding on appellee, despite the fact that Mr. Sukup was not the record owner of the property. See *United States ex rel. McKenna v. Myers*, 232 F.Supp. 65 (E.D.Pa.1964); *Commonwealth ex rel. Cabey v. Rundle*, 432 Pa. 466, 248 A.2d 197 (1968); *Commonwealth v. Rhoads*, 225 Pa.Super. 208, 310 A.2d 406 (1973). The contention that the consent was valid, however, is without merit.

A consent to a search involves a waiver of a constitutional right, which must be made knowingly and intelligently. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). See also, Belsky, *Criminal Procedure in Pennsylvania: The Pre-Trial Issues in Four Parts*, 78 Dick.L.Rev. 209, 248 (1973). The burden of proving the alleged waiver remains on the Commonwealth. *Commonwealth v. Burgos*, 233 Pa.Super. 325, 299 A.2d 34 (1972).

In the instant case, the Commonwealth failed to meet that burden: the only evidence of consent was a recollection of one of the troopers that in the early 1970's Mr. Sukup had asked the trooper to keep an eye on the property due to the report of burglaries and vandalism. There is no suggestion that the police searched the area for any other reason than to discover marijuana. First, the request was too remote in time to provide a continuing invitation to be on the Sukup property. Second, even if the "consent" were valid for some purposes, the police exceeded the scope of the request to "keep an eye on" the Sukup residence when they extended the search into the

350

field. That is, a request to watch the Sukup home could not be construed as a consent to search the entire property.

Therefore, I believe that the lower court's order should be affirmed.

SPAETH, J., joins in this dissenting opinion.