390 A.2d 752

COMMONWEALTH of Pennsylvania, Appellant,

v.

John J. LYONS, Jr., Appellee.

Superior Court of Pennsylvania.

Submitted Nov. 14, 1977.

Decided July 12, 1978.

Robert E. Colville, District Attorney, Pittsburgh, for Com., appellant.

Raymond Radakovich, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

The Commonwealth has taken this appeal from an order of the lower court suppressing certain gambling paraphernalia, namely poolmaking and numbers sheets. The evidence was discovered on appellant's person and in his car following his arrest for various Motor Vehicle Code violations. There being no real dispute that the court's suppression order is being challenged on a purely legal basis and has the effect of putting the Commonwealth out of court with respect to the gambling violations charged, we will allow the appeal. *Commonwealth v. Blevins,* 453 Pa. 481, 309 A.2d 421 (1973); *Commonwealth v. Brandt,* 244 Pa.Super. 154, 366 A.2d 1238 (1976); *Commonwealth v. Deren,* 233 Pa.Super. 373, 337 A.2d 600 (1975). Since we agree with the Commonwealth that the court's order suppressing the evidence was in error, we will reverse and remand the case for trial. The relevant facts are as follows.

At approximately 4:20 A.M. on May 17, 1976 several uniformed Pittsburgh Police Officers were parked in two patrol cars in a grocery store parking lot when they observed appellee driving his automobile in the wrong direction on an adjacent, one-way street. Both patrol cars pursued the vehicle and brought it to a halt on the side of the street, although the engine continued to run. When one of the officers asked appellee to produce his operator's

license and motor vehicle registration, which he could not, the officer observed that appellee's eyes were glassy, his speech was slurred, and his breath bore the odor of alcohol. The officer therefore ordered appellee from his car and placed him under arrest, noting that he could not walk without staggering. One of the officers then got into appellee's car to turn off the ignition and lock the doors so that the car would be secure for the night. At that time the officer observed numbers slips in plain view on the front seat of the car. Contemporaneously with seizing the numbers slips and securing the car, the police were engaged in frisking appellee to determine whether he had any identification, weapons or additional numbers slips on his person, whereupon they discovered more slips in his pocket. All the slips were made of rice paper which is readily soluble in water.

Upon hearing the recitation of these facts the court suppressed all the numbers slips, reasoning that neither the search of appellee's car nor the search of his person was justifiable without a warrant pursuant to the Fourth and Fourteenth Amendments of the Federal Constitution. The court did not specifically reach appellee's additional assertion that his rights under the Constitution of the Commonwealth of Pennsylvania were also violated.

At the outset it should be noted that the suppression court did not have the benefit of the United States Supreme Court's recent decision in *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) when it made its decision in this case. In *Mimms* the United States Supreme Court reversed the Pennsylvania Supreme Court and held that a traffic violator, properly detained at roadside, may be ordered from his car during the necessary exchange of information and credentials pursuant to the stop. Since Mimms was detained solely because his automobile had an expired license, *a fortiori* the police officers' ordering appellee from his car on the circumstances of this case did not run afoul of the Federal Constitution.

■ Having properly ordered appellee from his car and placed him under arrest, the next question is whether the police could enter appellee's car to turn off the engine and lock the doors. Of course, if the police were constitutionally entitled to enter the car, they could seize the gambling paraphernalia which then came into plain view. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Commonwealth v. Davenport,* 453 Pa. 235, 308 A.2d 85 (1973); *Commonwealth v. Watkins,* 217 Pa.Super. 332, 272 A.2d 212 (1970). There can be little rational questioning of the propriety of the police efforts to secure appellee's automobile; their conduct did not approach the intrusion unanimously approved by the Supreme Court in *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). See also *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Cf. *Commonwealth v. Brandt,* 244 Pa. Super. 154, 366 A.2d 1238 (1976). Appellee was manifestly and indisputably in no condition to operate the vehicle himself, and it would have been an act of wanton negligence for the police to have left the vehicle unattended with its engine running and doors unlocked.[1] Hence, the discovery and seizure of the numbers slips and poolmaking sheets pursuant to the police caretaking function was not unconstitutional. See Annotation, 48 A.L.R.3d 537, 550–57; *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Since the evidence of number writing and poolmaking discovered in appellee's car was not unconstitutionally seized, it follows that appellee's "fruit of the poisonous tree" argument with respect to the evidence found on his person must also fail.[2] *Commonwealth v. Scott,* 469 Pa. 258, 267, 365 A.2d 140 (1976).

1. Indeed, it has been held that an inventory search following an arrest for driving under the influence may be unreasonable if simply locking the car was a viable alternative. *Re One 1965 Econoline,* 109 Ariz. 433, 511 P.2d 168.

2. Appellee does not argue that his being frisked was illegal *despite* the discovery of the numbers slips and poolmaking sheets in his car. He only maintains that had the police not entered his car and found the gambling paraphernalia, they would not have been justified in removing papers from his pocket.

At this juncture the dissent argues that we should remand in order that the lower court might consider the Pennsylvania constitutional claims it previously did not consider. We, however, disagree with this approach. In the first place, if the Pennsylvania Constitution supported the lower court's suppression order, we could invoke it in order to affirm the court's decision, since that issue was raised in the court below. See generally 3 Vale Pa. Digest, Appeal & Error § 854(2) (1966). In any event, remanding this case for further consideration by the suppression court is singularly inappropriate. The facts were fully developed at the previous suppression hearing, and there is no possibility that the police ordering appellee from his car might have violated appellee's Pennsylvania constitutional rights. Whether such constitutional protection exists when the traffic violation is merely speeding, going through a red light or a stop sign, or driving the wrong way on a one way street is not the question in the instant case. Here the police had probable cause to believe that appellee was both legally and physically unable to drive the car. He had no driver's license or vehicle registration card, and he was obviously intoxicated. Under such circumstances appellee was prohibited from operating the car any further, leaving the police no alternative but to secure the car themselves. Therefore, any constitutional argument on these facts is clearly frivolous, and our remanding for such argument is a useless gesture which would, nevertheless, imply that we see some *arguable* merit to the question.

For the foregoing reasons, the order of the Court of Common Pleas of Allegheny County is reversed and the case is remanded for trial.

HOFFMAN, J., files a concurring and dissenting opinion, in which JACOBS, President Judge, joins.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

HOFFMAN, Judge, concurring and dissenting:

Appellant, the Commonwealth, contends that the lower court erred in granting appellee's motion to suppress physi-

cal evidence. Because I conclude that the lower court erred in its analysis of appellee's federal constitutional claims and failed to consider appellee's grounds for relief contained in his motion to suppress predicated upon Article I, § 8 of the Pennsylvania Constitution, I would remand for consideration of appellee's state constitutional claims.

On May 17, 1976, Pittsburgh police officers stopped appellee while he was driving in his automobile and charged him with driving while under the influence of alcohol,[1] driving without a license,[2] and violation of traffic signs.[3] After the police transported appellee to the police station, they also charged him with poolselling and bookmaking[4] and gambling devices.[5] On June 28, 1976, appellee filed a motion to suppress the physical evidence which allegedly was obtained by the police in violation of his federal and state constitutional rights. In particular, appellee averred that because the police did not have a search warrant, the search of appellee's person and vehicle were illegal. Further, appellee argued that the police illegally arrested him and improperly ordered him from his vehicle.

On August 2, 1976, the lower court conducted a hearing on appellee's motion. The following facts were adduced at that hearing: At approximately 4:25 a. m. on May 17, 1976, Pittsburgh police officers observed a car travelling the wrong way on a one-way street. The police stopped the car and asked the operator, appellee, to produce his operator's license and registration card. Appellee was unable to do so.

1. The Vehicle Code, Act of April 29, 1959, P.L. 58, § 1037; 75 P.S. § 1037. The Vehicle Code has been amended and renumbered since the date of the incident giving rise to the instant appeal. The Act of June 17, 1976, P.L. 162, No. 81, § 1, eff. July 1, 1977; 75 Pa. C.S. § 3731 now prohibits driving under the influence of alcohol.

2. The Vehicle Code, supra; 75 P.S. § 601. This section is now covered in 75 Pa. C.S. §§ 1501, 1512.

3. The Vehicle Code, supra; 75 P.S. § 1028(a). This section is now covered in 75 Pa. C.S. § 3111.

4. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa. C.S. § 5514.

5. The Crimes Code, supra; 18 Pa. C.S. § 5513.

During this brief conversation, the police formed the opinion that appellee was intoxicated. They based their conclusion on appellee's slurred speech, glassy eyes, and the odor of alcohol on his breath. Following standard Pittsburgh police practice when an operator is unable to produce a license or owner's card, the officers asked appellee to get out of the car. As appellee staggered from the vehicle, the police placed him under arrest for driving under the influence of alcohol. They also charged him with driving without a license and violation of posted traffic signs. One of the officers then entered the vehicle, turned off the engine, secured the car, and returned the keys to appellee. The officer testified that as he entered the vehicle he noticed small papers with various numbers, names, and pluses and minuses located on the driver's seat. Thinking the papers were bookmaking material, the officer removed them and showed them to a colleague at the scene who identified the papers as bookmaking material. The latter officer then patted appellee down and reached into appellee's shirt pocket after detecting papers which the officer believed might have been a form of identification. Instead of identification, the officer discovered other gambling paraphernalia. The police then transported appellee to the police station where he was charged with poolselling and bookmaking and gambling devices.

After hearing the foregoing testimony, the lower court granted appellee's motion to suppress the sheets found in the car and the papers found on appellee's person. It reasoned that because the police actions violated appellee's federal constitutional rights, the fruits of those actions had to be suppressed. This appeal followed.[6]

The Commonwealth contends that the lower court erred in granting appellee's motion to suppress evidence of poolselling and bookmaking and gambling. More specifically, the Commonwealth first claims that the papers found on the

6. It is settled that the Commonwealth may appeal from a pre-trial order suppressing evidence only if two requirements are satisfied: the appeal must involve a pure question of law, and the suppression must effectively terminate or substantially handicap the prosecution.

driver's seat were legally seized. It argues that after the police lawfully stopped appellee for various Vehicle Code violations. *Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (1973), the arresting officer justifiably entered the vehicle to turn off the engine and, while in the vehicle, saw gambling material on the driver's seat in plain view. The lower court did not have the benefit of the recent decision in *Commonwealth v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) in which the United States Supreme Court held that the Fourth Amendment to the United States Constitution, as applied to the states through the due process clause of the Fourteenth Amendment, does not forbid a police officer who has pulled over a traffic offender to order the offender out of his car. While *Mimms* does not consider the question of whether a police officer can then enter the vehicle to secure it, I would hold that in the instant case, the police officer acted reasonably in entering the vehicle for the purpose of turning off the engine, locking the doors, and returning the keys to the operator. After ordering appellee out of the vehicle and observing appellee's stuporous state, the officer justifiably concluded that appellee was physically incapable of securing his own vehicle. The officer then entered the vehicle to perform this caretaking function. The only conceivable alternative to entering the vehicle would have been to leave the unlocked car on the side of the

*Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963); *Commonwealth v. DeFelice,* 248 Pa.Super. 516, 375 A.2d 360 (1977). The instant appeal is based solely upon a question of law; there is no dispute as to the facts giving rise to this appeal. In its brief, the Commonwealth alleges that the suppression order will result in the termination of the prosecution of appellee for poolselling and bookmaking and gambling. Because the record fully supports this allegation, we conclude that we may properly consider the Commonwealth's appeal. *Commonwealth v. Bosurgi,* supra; *Commonwealth v. DeFelice,* supra; *Commonwealth v. Barkley,* 234 Pa.Super. 503, 341 A.2d 192 (1975).

The fact that the Commonwealth could still prosecute other charges is irrelevant to the determination that the requisite prejudice has been demonstrated as to a particular charge. In the instant case, therefore, the Commonwealth's showing of prejudice is not diminished merely because it can proceed unhindered in its prosecution of appellee on the other charges outstanding against him independent of any determination as to the appealability of the suppression order.

road with the engine running. Clearly, this would have been senseless.

Once lawfully inside the automobile, a police officer is entitled to seize objects in plain view. *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *Commonwealth v. Jackson,* 461 Pa. 632, 337 A.2d 582 (1975), cert. denied, 423 U.S. 999, 96 S.Ct. 432, 46 L.Ed.2d 376 (1976); *Commonwealth v. Murray,* 460 Pa. 53, 331 A.2d 414 (1975). *See also Commonwealth v. Nastari,* 232 Pa.Super. 405, 335 A.2d 468 (1975) and *Commonwealth v. DeJesus,* 226 Pa.Super. 79, 310 A.2d 323 (1973) (plain view doctrine applies if officer shines flashlight through vehicle window into interior of vehicle.) The record demonstrates that once in the vehicle, the officer came across gambling papers lying on the driver's seat in plain view. Because the officer was lawfully in a position to have that vantage point, *Harris v. United States,* supra; *Commonwealth v. Murray,* supra, he could lawfully seize the material on the seat.

Next, the Commonwealth argues that the lower court erred in suppressing gambling paraphernalia seized from appellant's shirt pocket. It argues that this search was justified as incident to a lawful arrest. ". . . [I]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under the Amendment." *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973). *See also Commonwealth v. Pinney,* 474 Pa. 210, 378 A.2d 293 (1977); *Commonwealth v. Donnelly,* 233 Pa.Super. 396, 336 A.2d 632 (1975). Furthermore, a search incident to a lawful custodial arrest is not limited to the discovery of evidence of the crime which triggered the search: "If the search happens to uncover evidence of crimes other than the one for which the accused has been arrested, this evidence may also be used against him in prosecutions for the other crimes so discovered." *Commonwealth v. Macek,* 218 Pa.Super. 124, 131, 279 A.2d 772, 776 (1971). *See also Commonwealth v. Barkley,* supra; *Commonwealth v. Spriggs,* 224 Pa.Super. 76, 302 A.2d 442 (1973).

In the instant case, the police lawfully stopped appellee for violations of the Vehicle Code. When the police approached appellee to ask for motor vehicle identification, they noted appellee's glassy eyes, slurred speech, and the aroma of alcohol on his breath. These observations furnished probable cause to make a custodial arrest of appellee for the misdemeanor of driving under the influence of alcohol.[7] *Commonwealth v. Guerry,* 469 Pa. 20, 364 A.2d 700 (1976); *Commonwealth v. Barkley,* supra. The police did in fact arrest appellee. It was incident to this lawful, custodial arrest that the police conducted the search of appellee's person and encountered further gambling paraphernalia, the basis for the charge of poolselling and bookmaking and gambling. *United States v. Robinson,* supra.[8]

Although I have concluded that the lower court erred in holding that the police officers violated appellee's rights guaranteed under the Fourth and Fourteenth Amendments of the United States Constitution, I would not reverse the

7.  See Rule 101(2), Pa.R.Crim.P.; 19 P.S. Appendix which provides: "Criminal proceedings in court cases shall be instituted by:  .   .   . 2. an arrest without a warrant when the offense is a felony or misdemeanor committed in the presence of the police officer making the arrest  .   .   . ." We have no difficulty concluding that appellee committed the misdemeanor of driving under the influence of alcohol in the presence of the officers making the arrest. After stopping appellee for driving in the wrong direction on a one-way street, they observed appellee in a clearly intoxicated state. *See Commonwealth v. Levesque,* 469 Pa. 118, 364 A.2d 932 (1976).

8.  The search of appellee's person could not have been justified as incident to the lawful stop for the Vehicle Code violations. Rule 51 A.(1)(b), Pa.R.Crim.P.; 19 P.S. Appendix provides for the issuance of a citation rather than an arrest when the offense charged is a summary offense under the Vehicle Code. Because of the minor nature of such offenses, the Comment to the Rule asserts that "the Rule strongly disfavors arrests except in extraordinary circumstances." Because criminal proceedings in summary cases are not instituted by an arrest and subsequent transport to a police station for the issuance of a complaint, the Commonwealth could not rely upon *United States v. Robinson,* supra, as authority for a search of the offender. *United States v. Robinson,* supra, turns upon the existence of a lawful *custodial* arrest as the justification for the ensuing search. In fact, the Supreme Court specifically declined to reach the question of a search incident to a " 'routine traffic stop,' i. e., where the officer

lower court's suppression order at this time. In his application to suppress, appellee averred not only that his federal constitutional rights had been violated, but also that the police had violated his rights guaranteed by the Pennsylvania Constitution. Because the lower court granted appellee's motion to suppress on the theory that appellee's federal constitutional rights had been violated, it did not reach appellee's state constitutional claims. Therefore, I would remand for consideration of appellee's averment that the police violated his rights secured by Article I, § 8 of the Pennsylvania Constitution. The Majority states that "there is no possibility that the police ordering appellee from his car might have violated appellee's Pennsylvania constitutional rights." Consequently, the Majority concludes that a remand would serve no purpose. I do not agree that a remand for an investigation of the state constitutional issues "is a useless gesture". To the contrary, appellee's state constitutional claims raise novel questions in Pennsylvania. Specifically, the United States Supreme Court rested its recent decision in *Commonwealth v. Mimms,* supra, on federal constitutional grounds, leaving open the state constitutional question. Cf. *Commonwealth v. Mimms,* supra (Dissenting Opinion by MARSHALL, J.), (Dissenting Opinion by STEVENS, J. in which BRENNAN and MARSHALL, JJ. join). On remand, the Pennsylvania Supreme Court reversed the judgment of sentence and ordered a new trial on an unrelated ground, *Commonwealth v. Mimms,* 477 Pa. 553, 385 A.2d 334 (1978). In a Concurring Opinion, joined by EAGEN, C. J. and MANDERINO, J., Justice ROBERTS stated that the Court should amend its original order to add that the Pennsylvania constitution as well as the federal constitution condemned the police conduct in that case. Consequently, there are at least three justices of the Pennsylvania Supreme Court who have serious questions as to the parameters of lawful police conduct under state law in the context of ordering Vehicle Code violators out of their automobiles.

would simply issue a notice of violation and allow the offender to proceed." *United States v. Robinson,* supra, 414 U.S. at 235, fn. 6, 94 S.Ct. at 477.

Inasmuch as the instant case is the first case since *Mimms* to raise this issue, I am reluctant to conclude that the contention is, in the words of the Majority, "clearly frivolous." To the contrary, I believe that the *Mimms* issue raises a significant question of state constitutional law the resolution of which more appropriately belongs in the court below. Accordingly, I would remand.[9]

JACOBS, President Judge, joins this concurring and dissenting opinion.

---

**9.** Appellant also raises the question of the permissible extent of the police search of his body incident to his arrest. As in *Mimms,* the United States Supreme Court based its decision in *United States v. Robinson,* supra, on the nature and parameters of the personal rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution. In *Commonwealth v. Shillingford,* 231 Pa.Super. 407, 332 A.2d 824 (1975) (fn. 3), our Court noted that this issue remained unresolved as a matter of state constitutional law. A remand, therefore, would afford the lower court an opportunity to address this issue.