402 A.2d 539

COMMONWEALTH of Pennsylvania, Appellant,

v.

**Dallen B. LEHMAN.**

Superior Court of Pennsylvania.

Argued April 14, 1978.

Decided April 25, 1979.

Petition for Allowance of Appeal Denied Aug. 15, 1979.

David B. Hartman, Assistant District Attorney, Somerset, for Commonwealth, appellant.

Ronald P. Rusinak, Johnstown, for appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

VAN der VOORT, Judge:

Defendant was charged with possession of marijuana and with intention to deliver marijuana. He filed an "Application to Suppress Evidence," on which a suppression hearing was held. One of two arresting officers testified. The suppression judge ordered the evidence suppressed; and the Commonwealth has appealed the ruling.

The evidence supports, and the judge found these facts, (Opinion by SHAULIS, J., pp. 3–4):

Shortly before 2 A.M. on May 14, 1977, Officer Gratten was accompanying Officer Clifford Shaffer on a routine patrol along Route 403 in Conemaugh Township. They observed a pickup truck in front of them, driving on the wrong side of the road. The officers followed the truck for about a half-mile as it turned off Route 403 onto Miller-Picking Road, Officer Shaffer decided to stop the truck.

Officer Shaffer approached the driver's side of the pickup truck and asked the driver, defendant Lehman, to step out. Shaffer asked Lehman to submit to a field sobriety test and then walked with him to the police cruiser, which was parked behind the truck. Officer Gratten had approached the passenger side of the truck in order to watch the female passenger. When Shaffer took Lehman back to the police cruiser, Gratten came around to the driver's side of the truck. Gratten shined a flashlight into the open driver's door to look at the female passenger who had remained in the truck.

In the beam of the light, Gratten saw what he believed to be 'marijuana seeds, stems and flowers' on the floor of the driver's side. He picked up some of this material and carried it back to the police car. Gratten returned to the truck, advised the passenger of her 'Miranda' rights, and saw more suspected marijuana on the floor. Under the driver's seat he found a brown bag containing more suspected marijuana separated into three plastic 'sandwich baggies.' He took these items back to the police cruiser and advised Lehman of his 'Miranda' rights. Returning to the truck again, Gratten took a pipe from the ashtray and a vial containing suspected marijuana from the glove compartment. Gratten at this point returned to the police cruiser and told Lehman he was under arrest. The officers transported Lehman to the municipal building where another 'sandwich baggy' of suspected marijuana was found in a pocket of defendant's overalls.

Defendant was charged with possession and possession with intent to deliver a total of 14 ounces of marijuana. No vehicle code violations were filed against defendant. The female passenger was not arrested or charged with any offense.

The Commonwealth argues that the eccentric behavior of the driver of the car furnished probable cause to stop the truck. The defendant argues that there was no probable cause. The suppression judge assumed arguendo, without finally deciding, that the officers had probable cause for the

initial stop; but held that the subsequent investigation of the inside of the truck by Officer Gratten was improper.

We believe that there was ample justification for the initial stop, because of the eccentric driving of the defendant. The subsequent discovery of the marijuana derived from no illegal act of the officers.

The Commonwealth argued that the officers' inspection of the interior of the truck, using a flashlight in the dark, and the discovery of the contraband material on the floor of the vehicle was justifiable under the "plain view" doctrine: *Commonwealth v. Murray*, 460 Pa. 53, 331 A.2d 414 (1975); *Commonwealth v. Nastari*, 232 Pa.Super. 405, 335 A.2d 468 (1975); *Commonwealth v. DeJesus*, 226 Pa.Super. 79, 310 A.2d 323 (1973).

The suppression judge ruled, to the contrary, that in the circumstances of this case, the officer had not put himself legally into a position to enjoy a "plain view". Said the judge, (Opinion, p. 7):

"The right asserted by Officer Gratten as the triggering mechanism for the plain view doctrine is the right to investigate a suspected vehicle code violation. However, the driver had already been removed from the vehicle and had apparently satisfied the first officer's curiosity as to his innocence of the suspected infraction when the other officer put himself in a position to view the truck's interior. We do not see the justification for Officer Gratten's desire to further inspect the vehicle once the driver had been removed, apparently with no cause for police alarm. The driver had apparently passed the field sobriety test and yet for some unexplained reason was taken back to the police cruiser while Officer Gratten 'inspected the interior' of the truck and found the suspected marijuana. We do not believe Officer Gratten was in a position in which he can claim a right to enjoy a plain view."

The suppression judge then cited *Commonwealth v. Mimms*, 471 Pa. 546, 370 A.2d 1157 (1977) as controlling this

present case.[1]  The court below could not have known that *Mimms* would be reversed and as reversed, supportive more of the Commonwealth's position rather than that of appellant's.  *Mimms* held that a police officer who had stopped an automobile driver for a traffic violation had the right to examine the person of the driver to inspect a "large bulge" under his sports jacket.

Assuming that the initial stop was proper, as certainly it seems, Officer Garrett did nothing illegal or in violation of the constitutional rights of this defendant when he approached the passenger side of the truck, nor when he went to the driver's side of the truck on a public street, nor when he shined the flashlight through the open door into the interior of the truck.  At that point, the suspect material was in "plain view" of the officer.

The suppression judge obviously did not accept Officer Garrett's claim that his movement to the driver's side of the truck was motivated by a fear that the passenger might be of personal danger to him and/or his fellow officer; but his motivation is of no legal significance in this present case, since the officer had a legal right to be where he was when he shone the flashlight into the interior of the truck.  See *Commonwealth v. Janek*, 242 Pa.Super. 340, 363 A.2d 1299 (1976).

At that point, without any acceptable, proved motivation for using the flashlight, did the officer have a legal right to bring into "plain view" what was hidden by the darkness?  We find he did, and so held in *Commonwealth v. DeJesus*, 226 Pa.Super. 79, 310 A.2d 323 (1973).  See also *Commonwealth v. Nastari*, 232 Pa.Super. 405, 412, 335 A.2d 468 (1975).

The suppression order is reversed, except as to the contents of the glove compartment, which were not within the "plain view" of the officer, and the case is remanded for trial.

1.  *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).

SPAETH, J., files a dissenting opinion.

JACOBS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

Only one person testified at the suppression hearing—Officer Gratten. He testified that appellee was stopped by Officer Shaffer and himself, and was asked to get out of his truck to take a field sobriety test. Appellee complied and passed the test. Record at 42a. However, instead of being released, appellee was placed in the officers' car. Record at 34a–36a. When asked by the court why this action was taken, Officer Gratten stated that he had "no idea." Record at 41a. He also stated that appellee was never cited for a motor vehicle code violation in connection with the stop. Record at 38a and 40a–41a. Thus, the record shows no justification for appellee's continued detention after he passed the sobriety test, and since the Commonwealth had the burden of proof at the suppression hearing to show that the seizure of marijuana was lawful, Pa.R.Crim.P. 323(h), we must assume that no justification exists. Moreover, since appellee's detention after the test was unjustified, it was *ipso facto* unlawful, even though the officers may have had reasonable cause to stop appellee initially and detain him until he took the sobriety test. *Cf. United States v. Luckett*, 484 F.2d 89 (9th Cir. 1973) (the length and scope of a stop not based on probable cause are strictly limited by the circumstances that rendered the stop permissible; when the circumstances are no longer present, the detention must cease.) *  Since Officer Gratten did not discover the mari-

_____

* I have more difficulty than the majority in concluding that the initial stop of appellee was justified. Although there was testimony that appellee was weaving back and forth across the road, the lower court could have believed that some of this driving resulted from appellee's desire to avoid potholes. Record at 28a–31a. Also, when asked why appellee was stopped, Officer Gratten was unable to give a definitive answer. Record at 41a–42a. Matters of credibility are usually to be decided by the hearing judge. *See Commonwealth v. Richard*, 233 Pa.Super. 254, 336 A.2d 423, 430 (1975) (SPAETH, J., concurring). Here the hearing judge was evidently reluctant to give full credibility

juana in appellee's truck until after appellee had taken the test and been placed in the officers' car, the discovery was tainted by the illegal detention; for without the detention, appellee would have been free to drive from the scene, and Officer Gratten would not have been in a position to engage the female passenger in appellee's truck in conversation, nor to search the floor of the truck with his flashlight while so engaged.

Consequently, I should affirm the order of the lower court and suppress the marijuana.

to the Commonwealth's proof. I see little reason for us to be less reluctant.