Commonwealth *v.* Murray et al., Appellants.

Submitted April 11, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Jess S. Jiuliante, Robert D. Hain,* and *Jiuliante, Falcone, Jones, Shapira & Vendetti,* for appellants.

*Alois Lubiejewski,* Assistant District Attorney, and *R. Gordon Kennedy,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, November 21, 1973:

The six judges who heard and decided this appeal being equally divided, the judgment of sentence is affirmed.

---

OPINION BY SPAETH, J., IN SUPPORT OF REVERSAL:

Appellants, Donald Vincent Murray and Paul Herman Adams, are attacking their convictions of burglary and possession of burglary tools on the grounds that the fruits of an illegal stop, or of an illegal arrest, or of an illegal search pursuant to a warrant were admitted into evidence against them in violation of their constitutional rights as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution. I find their claim with regard to the stop to be meritorious and therefore, without reaching the other grounds alleged, would reverse and remand for a new trial.

On September 2, 1969, around 11:40 p.m., there was an attempted burglary at the Robert Hall's Clothing Store in Millcreek Township, Erie County, Pennsylvania. In responding to a burglar alarm that was triggered in the attempt but sounded only at the police station, Officer Stevenson of the Millcreek Township Police Department reached the scene in time to get a fleeting glimpse of the shadow of a person leaving the area of the store on foot. The officer was unable to describe the person. A cursory search of a trailer park adjacent to the store did not produce the person, nor any suspects. The officer found, still stuck in the door, a pry bar that had apparently been used to jimmy it partially open. Within minutes, Officers Urraro and Kensil arrived on the scene and were advised of the shadow. They proceeded to search the area by cruising around in their patrol car. About an hour after the initial alarm, they saw a 1962 Chevrolet pull into the

driveway of a house* located near the store, stop for a few moments, and then pull out again. The Chevrolet was not the only car the officers had seen that night, but because of its behavior, which they considered "suspicious", they decided to follow it and did so for about a half mile. During this time, no traffic laws were violated, nor was the car driven in an unusual manner. Finally, the officers motioned the car over and stopped it on the side of the road. Officer Urraro got out of the patrol car and went to the passenger side of the car. At some point soon thereafter, he shined a flashlight into its rear interior. Lying on the floor behind the driver's seat but visible from the outside were a hammer and railroad spike. Upon request, the three occupants of the car—appellant Adams (the driver), appellant Murray, and a third person (who was cleared of all charges)—produced proper identification. On the basis of Officer Urraro's observations, Adams was asked to follow the officers, whose ranks had by then been augmented by others, including Officer Stevenson, who also took a look into the rear of the car. On the basis of what the officers had observed, Officer Stevenson obtained a warrant for a search of the car. The search produced items that had been taken in a burglary earlier that night of the Ferraro Ford Agency.

Appellants were charged with the burglary of Ferraro Ford, and with possession of burglary tools. Their motion to suppress the evidence that was in plain view during the stop as well as that obtained during the search pursuant to the warrant was denied, as was a motion for a new trial and in arrest of judgment based on the same arguments that had been made in support of the motion to suppress.

---

* The house was the home of the parents of one of appellants, Donald Vincent Murray.

The pivotal question presented by this appeal is whether the car in which appellants were riding was legally stopped. If not, the police officers had no right to be in a position to look into the rear of the car with flashlights and to see what they saw. Where a stop is illegal, the "plain view doctrine" does not apply. *Harris v. United States,* 390 U.S. 234 (1968) ; *Commonwealth v. Watkins,* 217 Pa. Superior Ct. 332, 272 A. 2d 212 (1970). Consequently, the hammer and spike should have been suppressed as its fruits. Moreover, the search warrant, which was issued on the basis of what the officers observed, would be invalid either because it too was the fruit of the illegal stop and no attenuation occurred to lessen the taint of the illegality or because without consideration of the hammer and spike there was no probable cause for the search, from which it would follow that the contraband obtained during the search should have been suppressed. *Wong Sun v. United States,* 371 U.S. 471 (1963) ; *Commonwealth v. Meadows,* 222 Pa. Superior Ct. 202, 293 A. 2d 365 (1972).

*Commonwealth v. Hicks,* 434 Pa. 153, 253 A. 2d 276 (1969), relying on *Terry v. Ohio,* 393 U.S. 1 (1968), makes it clear that stopping an individual under a show of authority is a seizure of his person that must meet the standards of the Fourth Amendment. *Commonwealth v. Boyer,* 223 Pa. Superior Ct. 196, 297 A. 2d 493 (1972) (HOFFMAN, J., dissenting). There are two circumstances in which an officer may constitutionally seize a person. The first is when the police officer has probable cause to arrest, *i.e.,* at the inception of the seizure he has knowledge of sufficient facts and circumstances, gained through trustworthy information, to warrant a prudent man in the belief that the person seized has committed a crime. *Commonwealth v. Hicks, supra* at 158, 253 A. 2d at 279. The second is where only a momentary seizure is made for purposes of crim-

inal investigation. *Adams v. Williams,* 407 U.S. 143 (1972). Even if probable cause to arrest is lacking, an officer may stop a person for brief questioning if he observes specific instances of unusual and suspicious conduct on the part of the person which leads him reasonably to conclude that criminal activity is afoot. *Commonwealth v. Hicks, supra* at 158 and 160, 253 A. 2d at 279. *See generally Commonwealth v. Berrios,* 437 Pa. 338, 263 A. 2d 342 (1970). These rules apply to persons stopped while walking or while riding in a car. *See Commonwealth v. Pollard,* 450 Pa. 138, 299 A. 2d 233 (1973).

In the present case there was no probable cause to stop the car. The two officers who stopped it had no clues as to who had committed the attempted burglary of the Robert Hall's Clothing Store. Officer Stevenson had been unable to give them a description of the person whose shadow he saw fleeing the scene. Whoever the person was, he was on foot. There was no evidence that he had a car. If he did have a car, he could have been out of the area by the time appellants were stopped an hour after the initial alarm sounded. Nothing linked the burglary to appellants or to the car in which they were riding. There was nothing unusual about the car's mere presence in the area because although it was just after midnight, there were many other cars on the road (none of which was stopped). The only facts on which the Commonwealth can rely are the officers' knowledge that a burglary had been attempted and their observation of "suspicious" behavior by the car in the vicinity of the burglary.

These facts are not enough on which to predicate a finding of probable cause. In *Commonwealth v. Pegram,* 450 Pa. 590, 301 A. 2d 695 (1973), it was held that there was no probable cause for the arrest of a man who fled from the vicinity of an attempted robbery of which the detaining officers had knowledge. The flight

in that case was much more suspicious than the activity viewed by the officers in this case. If flight coupled with the officers' knowledge did not suffice to establish probable cause, then the evidence presented here cannot. *Cf. Commonwealth v. 1958 Plymouth Sedan*, 418 Pa. 457, 211 A. 2d 536 (1965) (suspicious looking car in area of probable crime, no probable cause).

Nor were the facts enough to warrant a momentary seizure for investigative purposes. Just how suspicious the actions of the car were is determinative. The Commonwealth, in its brief, contends that the occupants of the car could have seen the patrol car and, not wishing to be discovered, pulled into the driveway, backed out, and proceeded slowly in the opposite direction so as to avoid suspicion. But Officer Urraro testified at the hearing on the motion to suppress that he was a distance away from the car when it pulled into the driveway. What he saw could not lead him reasonably to conclude that the action taken by appellants was in response to sighting his patrol car and that criminal activity was afoot. The facts here are unlike those presented in *Commonwealth v. Pegram, supra,* and *Commonwealth v. Meadows, supra,* where police officers were close enough to see that the defendants' actions, flight in one case and stepping out of sight in the other, were responses to spying the officers. Moreover, appellants' conduct was too consistent with normal behavior for it to be labeled "suspicious" without other facts.* The officers had no information that the car did not have proper business at the house into whose driveway it pulled. After it backed out of the driveway, it did nothing that could be labeled suspicious. During the half mile the officers followed the car, no traffic ordinances were violated. None of the occupants of the

---

* Appellants maintain that the car pulled into the driveway in order to pick up appellant Murray whose parents own the house.

car made furtive moves as if to hide anything or themselves from plain view. When motioned over, appellant Adams complied. If appellants had done something odd while the police followed, we might have been able to reach a different result. They did nothing.

The judgment of sentence should be reversed and the case remanded for a new trial.

HOFFMAN and CERCONE, JJ., join in this opinion in support of reversal.