372 A.2d 908

**COMMONWEALTH of Pennsylvania**

v.

**Clarence KING, Appellant.**

Superior Court of Pennsylvania.

Submitted June 22, 1976.

Decided April 19, 1977.

John W. Packel, Assistant Public Defender, Philadelphia, for appellant.

Deborah E. Glass and Steven H. Goldblatt, Assistant District Attorneys, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

On December 13, 1974, appellant Clarence King was found guilty of two counts of burglary by a judge sitting without a

jury. A direct appeal was taken although no post-trial motions had been filed. On May 7, 1975, this court remanded the case for the filing of post-trial motions. On January 7, 1976, the post-trial motions were denied, resulting in this appeal. We affirm.

At 1:00 a. m. on September 2, 1974, Albert Croce discovered an intruder in his Philadelphia apartment at 4816 Florence Avenue. Mr. Croce yelled for help and the intruder jumped out the window. Later that morning, Mr. Croce found that eighty-two dollars were missing from the pocket of his pants.

At 3:45 a. m. of the same day, Wilma Alston woke to discover an intruder in her second floor apartment at 926 South 49th Street. She ran from her room, calling for help. People from the third floor of the building came to her room just in time to see the intruder flee. Six dollars in quarters were missing from Mrs. Alston's apartment.

Officer Albert Durso of the Philadelphia Police Department testified that at 3:30 a. m. on September 2, 1974, he received a radio bulletin informing him that a burglary suspect was believed to be in his area. The suspect was described as a negro male of a stated height[1] with blue pants, blue hat, of a "flop type" and waist-length jacket. At 4:20 a. m., Officer Durso noticed a negro male who fit the broadcast description. The man, appellant, was proceeding west on Warrington Avenue between Forty-ninth and Fiftieth Streets. There were one or two other negro males on the street in that vicinity at the time. The place of the stop was no more than a block from the Alston apartment. The record is silent as to its proximity to the Croce apartment. The officer testified that appellant "fitted the description of the man I was looking for." (T–30) Officer Durso asked appellant where he was coming from and appellant replied that he had been at his mother's house at 5408 Cedar Avenue, approximately eight blocks away. His destination

1. The officer testified that the description included a height which fit appellant, but at hearing he could not recall the exact height included in the broadcast.

was his home at 5018 Springfield Avenue, approximately one block away. The officer noted at the time of the stop that appellant's clothes were wet, although the rain had stopped at least one-half hour before.

Officer Durso frisked appellant and uncovered a small, black handled knife, a carving knife (almost like a scalpel), $166.00 in paper money, and $8.54 in coin. The officer radioed for a police wagon which transported appellant to the Alston and Croce apartments, where both victims positively identified appellant as the intruder.

Procedurally, it should be noted that at a point half-way through the Commonwealth's case, appellant's attorney, for the first time, raised the lack of probable cause for the arrest as an issue. The lower court agreed to entertain and hear the motion, which was then denied.

Upon this appeal, the sole issue raised is appellant's contention that Officer Durso lacked probable cause to search and to arrest him. Therefore, it is contended, the knives and money which were obtained by exploitation of the search and arrest should have been suppressed.

Appellant contends that the description of the suspect as relayed to Officer Durso by radio was insufficient to provide the officer with the requisite probable cause to stop, frisk and subsequently arrest him. Appellant also points to the approximate 50 minute delay between the broadcast and the stopping of the appellant within a block from the scene of the Alston burglary.

It is obvious that the time factors are confused. The lower court attributed this confusion to the fact that both victims had been in a sound sleep, and accepted Officer Durso's time sequence as correct, i. e., the broadcast at 3:30 a. m. and the stop and arrest at 4:20 a. m. Since Croce was positive appellant was returned to his apartment within an hour of the intrusion, the lower court found it had occurred in a short interval just prior to the 3:30 a. m. broadcast. The same conclusion was reached as to the Alston intrusion.

In *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969), a patrolman was informed that a negro in his thirties with a mustache, of specified height and weight, wearing a brown coat, was suspected of having committed a burglary. Shortly thereafter, the officer and his partner observed Hicks on the street within four blocks of the scene of the crime. Because Hicks resembled the description of the suspect, he was stopped, frisked and found to be in possession of a knife. Hicks was arrested and subsequently identified by the victim and by the victim of another burglary committed nearby.

■ The Supreme Court of Pennsylvania observed that there are two situations in which a police officer is justified in stopping and searching an individual. The first is where the police officer has probable cause to arrest, "i. e., if at the inception of the seizure he has knowledge of sufficient facts and circumstances, gained through trustworthy information, to warrant a prudent man in the belief that the person seized has committed, is committing, or is about to commit a crime." 434 Pa. at 158, 253 A.2d at 279. Under such circumstances, the search is justified as incident to the arrest. *See also Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Commonwealth v. Ayers,* 239 Pa.Super. 263, 361 A.2d 405 (1976).

■ A police officer without probable cause to arrest need not ignore suspicious conduct. Unusual conduct on the part of an individual or other suspicious circumstances will justify an investigatory stop. *Commonwealth v. Everett,* 234 Pa.Super. 249, 338 A.2d 662 (1975). If the officer reasonably believes that the individual may be armed or dangerous, a limited search for weapons is justifiable to protect the police officer's safety. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ The investigatory stop is a useful and necessary police tool. It fills the gap between circumstances where the officer obviously has the right to arrest and those where the officer obviously has no right to invade personal privacy.

It credits police officers with an instinct developed through years of experience and observation. However, while use of the investigatory stop is, to a limited degree, within the discretion of the police officer, its scope is strictly controlled by the fourth amendment.

In *Hicks, supra,* the court concluded that the officer did not have probable cause to arrest. Furthermore, it was held that the officer was not justified in conducting a limited search of Hicks because the circumstances of the stop could not reasonably have engendered in the police officer a belief that the seized person was armed or dangerous.

*Commonwealth v. Berrios,* 437 Pa. 338, 263 A.2d 342 (1970), and *Commonwealth v. Pegram,* 450 Pa. 590, 301 A.2d 695 (1973), are similar. In *Berrios,* police officers received information that three men, two negroes in dark clothing and one Puerto Rican in light clothing, were suspected of involvement in a shooting. The officers observed a negro in dark clothing and a Puerto Rican in light clothing within three blocks of the scene of the crime. A stop and frisk uncovered a firearm. The supreme court held the search illegal because the conduct of the individuals would not have led a reasonable man to conclude that they were armed or dangerous.

In *Pegram,* two police officers investigating a burglary saw a man near the scene. After spying the officers, the man fled. A stop and search yielded a knife and the following full search provided items taken during the burglary. The supreme court held that the seized items should have been suppressed.

In *Commonwealth v. Jones,* 457 Pa. 423, 322 A.2d 119 (1974), the suspects were described to a police officer as " 'four or five Negro males between the ages of 17 and 21 in dark clothing' . . . ." 457 Pa. at 426, 322 A.2d at 122. The officer spotted a person who fit that description walking quickly, "breathing heavily, perspiring, and frequently looking over his shoulder." 457 Pa. at 426, 322 A.2d at 122 (footnotes omitted). A stop and frisk produced a .32 caliber

ammunition clip. The court held that the officer had probable cause to arrest the suspect.

In *Commonwealth v. Sams,* 465 Pa. 323, 350 A.2d 788 (1976), the arresting officer received word that a group of negro males were involved in a stabbing in Philadelphia, and that they were running south on Eleventh Street. The officer saw the defendant running south on Juniper Street. He stopped the defendant and arrested him for violation of the Philadelphia curfew law, which was not an arrestable offense. The supreme court held that the officer did not have probable cause to arrest nor had he reason to stop and frisk. *Jones* was distinguished on the ground that the suspect in that case had been conducting himself suspiciously, i. e., he had been walking quickly, breathing heavily, perspiring and looking over his shoulder. In addition, the officer knew that the guilty parties had been chased from the scene of the crime on foot, and that the suspect matched the description of one of the perpetrators.

■ The lower court, by its findings, distinguishes the facts in this appeal from those holding lack of probable cause. At the time of the stop there were only one or two other people on the street, the description of the suspect was very specific considering the detail as to kind of clothing, height and race of the suspect. Also the suspect's explanation of just having left his mother's house coupled with the wet clothing and the fact it had stopped raining one-half hour prior to the stop raised sufficient, justifiable suspicion in the officer's mind, and further formed the basis for probable cause.

We agree. It is clear that Officer Durso had probable cause to stop, frisk and arrest appellant. There were sufficient circumstances present to constitute suspicious conduct on the part of appellant. Although appellant was one of two or three negro males on the street at the time of the night, the description given the officer was sufficiently specific to establish to the officer that appellant fit that description.

It follows, therefore, that the admission of the knives and money was proper.

The judgment of sentence of the lower court is affirmed.

HOFFMAN and SPAETH, JJ., concur in the result.