## Commonwealth v. Neith

*John F. Spirk, Assistant District Attorney,* for Commonwealth.

*James C. Hogan,* for defendant.

VAN ANTWERPEN, *J.*, February 23, 1981—This matter comes before us on defendant's omnibus pre-trial motion seeking to quash the information and to suppress evidence of the offense.

The motion to quash clearly has no merit and will be summarily denied and dismissed.[1]

Defendant was observed operating his automobile in an erratic fashion by Officer Brown of the Freemansburg Police, who was then off-duty. While following defendant for about a half-mile, Officer Brown radioed Officer Fulmer for assistance. Defendant then turned into the driveway of his private home. This was observed by Officer Fulmer.

The two officers then approached defendant, still in his vehicle. Upon detecting the odor of alcohol, they had him perform some field tests for sobriety. Defendant admits to having failed these miserably,

---

1. This issue has not been briefed and we deem it waived. We also note that the printed form of complaint utilized by the Commonwealth allows for any or all of the subsections to the Vehicle Code, 75 Pa.C.S.A. § 3731 to be charged. Merely choosing which subsection to proceed under in the information does not constitute a variance with the complaint.

falling flat on his face. He was then placed under arrest, read his Miranda warnings and then transported to the breathalyzer test site.

Stated simply, the issue involved herein is whether a police officer may make a warrantless arrest of a citizen on the driveway of his private property for the offense of driving while intoxicated. Given probable cause for the initial investigatory detention, we have no problem in upholding the lawfulness of such an arrest.

Under Pa.R.Crim.P. 101 and 75 Pa.C.S.A. § 3731(c), a police officer may make a warrantless arrest of a person whom he has probable cause to believe has violated the provisions of the above section (dealing with driving under the influence) regardless of whether the violation was committed in such officer's presence. It is therefore immaterial that Office Fulmer did not personally observe defendant's erratic driving.

Brief detentions for investigatory purposes are permissible despite the lack of probable cause for a lawful arrest: Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed. 2d 889 (1968). In Com. v. Kloch, 230 Pa. Superior Ct. 563, 327 A. 2d 375 (1974), the court upheld a warrantless arrest following the suspect's failure of a field sobriety test. Kloch rejected the argument that the arrest occurred from the moment the officers suspected defendant of being intoxicated. The court found that the arrest did not occur until appellant was placed in the troopers' patrol car, and the brief detention prior to that time was for purposes of determining "whether there was a basis for holding appellant." Id., 230 Pa. Superior Ct. at 573, 327 A. 2d at 381-382. Com. v. Mills, 235 Pa. Superior Ct. 173, 340 A. 2d 900 (1975), reaches a similar result. Defendant here also was not placed under arrest at the time the

officers approached him in his driveway, but rather after his failure of the field test produced sufficient evidence of intoxication to give the officers a basis for holding him. At this point, probable cause for the arrest was clearly established.

The only question remaining is whether the police could detain defendant, on his private property for investigation, prior to arresting him. Relying in part on Terry v. Ohio, supra, the Pennsylvania Supreme Court in Com. v. Murray, 460 Pa. 53, 61, 331 A. 2d 414 (1975), stated:

"Because a motorist's extreme mobility may otherwise allow him to avoid police confrontation, the State has an equally strong interest in these cases in stopping a moving vehicle to freeze momentarily a situation of suspected criminality. However, these decisions have made it clear that to justify the intrusion the police officer must be able to point to specific and articulable facts which taken together with rational inferences from those facts reasonably warranted the intrusion."

Defendant's erratic driving, which included driving on the wrong side of the road, weaving and swerving, etc., was observed by Officer Brown. This fact alone was sufficient to raise the inference that defendant may have been driving under the influence and thus justify the investigative detention. The mere fact that defendant and his vehicle came to a rest safely does not defeat the Commonwealth's basis for detaining him: Kloch, supra. Furthermore, the driveway to a house does not occupy the same revered position with respect to constitutionally protected expectations of privacy as the interior of the dwelling itself. In U.S. v. Santana, 427 U.S. 38, 96 S. Ct. 2406, 49 L.Ed. 2d 300 (1976), the United States Supreme Court upheld the war-

rantless arrest of defendant while standing in the doorway of her house. Mr. Neith was arrested in his driveway where he was in full view not only of the investigating officers but of any passersby who might happen to see him; he cannot thus claim to have the same reasonable expectations of privacy as one who has (quoting defendant's brief) ". . . been fleet of foot, gotten inside his house, locked the door, and gone to bed. . . ."[2]

In Com. v. Campbell, 28 D. & C. 260 (1936), (Anno. Drunken Driving—On Private Property, 29 A.L.R. 3d 938, 946), then-Judge Musmanno expressed the view that the (driving while under the influence) statute applied to violations committed while on private, as well as public property. In Com. v. Campbell, the court stated at p. 263:

"But aside from the absurdity and unfairness of exempting vast estates from the operation of The Vehicle Code, it appears to us that it would be equally as unjust to suspend the operation of its salutary and wholesome provisions on small properties. For instance, should a drink-mad motorist be permitted to drive wildly out of his private garage, bowling over anyone in his irresponsible path and yet be immune from prosecution just because he happens to be on his own property? *Many private driveways cross sidewalks which border public highways* so that pedestrians cannot but traverse them as they proceed on their individual and lawful errands. May an inebriated driver strike such pedestrians and yet laugh at the law which could admittedly arrest him if the collision had occurred only a few feet further out into the public street? Is the statute before us so mechanical and

2. Clearly, in defendant's allegedly intoxicated state; where he could not even manage to stay upright and walk a straight line, such "fleetness of foot" was highly improbable.

obtuse that it can compass so unreasoning, unreasonable, irrational and fatuous a distinction? We know that the law at times is capable of some foolish things but we cannot believe that the legislature of 1931 intended so sophistical a differentiation as is contended for in behalf of defendant here." (Emphasis supplied.)

Although there appears to be no Pennsylvania appellate authority on this point, other lower court decisions have since applied the same rationale and reached the same result. See, e.g., Com. v. Price, 64 D. & C. 2d 694 (1972). Defendant herein is not charged with drunken driving on private property but rather on a major public thoroughfare; however, the above discussion is illuminative of the legislative policy behind the statute.

We therefore, finding no merit in defendant's argument that his arrest was unlawful, deny and dismiss the motion to suppress.

Wherefore, we enter the following

### ORDER

And now, February 23, 1981, defendant's motions to quash and suppress are hereby denied and dismissed.

