## Commonwealth v. Baldo

*Robert C. Keller,* for Commonwealth.
*David Weinstein,* for defendant.

DIGGINS, *J.*, July 22, 1981— On June 24, 1980, a truck crane was being operated on Route I-95 in the City of Chester by defendant. Defendant had in his possession an overweight permit for 168,000 pounds. Said truck crane was stopped by State Trooper Michael Nagurney patrolling in a marked cruiser.

The officer called PennDOT to send personnel to weigh the vehicle. Wayne Jackson and Pierre Cornelius, certified Weight Masters, arrived on the scene. At the direction of Trooper Nagurney, The Weight Masters attempted to weigh the truck crane. Using portable scales, six scales were placed in the rear area of the truck crane, and said truck crane was backed onto the scales. The rear portion of the truck crane caused two of the scales to go over their calibrated weight of 20,000 pounds. These two scales were taken out of commission and after a brief discussion, it was decided to weigh

each axle separately. This particular vehicle had six axles. This particular type of weighing vehicles is referred to as multi-drafting and is prescribed by the Motor Vehicle Code, 75 Pa.C.S.A. §4981.

The particular scales being used were general Electrodynamic M. D. 500 A portable scales and evidence was produced showing that these scales were approved by the Department of Agriculture. The scales are colored coded and are used in pairs. The red scales were put under the inside tires of each axle and the green scales were put under the outside tires. Starting from the rear of the truck-crane, this procedure was used to weigh all six axles. The following readings were taken from the scales:

|        | AXLE 6 | AXLE 5 | AXLE 4 |
|--------|--------|--------|--------|
| Green  | 17,000 | 18,700 | 20,300 |
| Red    | 17,800 | 20,700 | 19,850 |
| Red    | 18,600 | 18,100 | 18,900 |
| Green  | 18,850 | 18,800 | 20,100 |
|        |        | FRONT AXLES | |
| Green  | 15,750 | 14,900 | 14,600 |
| Green  | 19,700 | 16,700 | 17,550 |
| Totals: Front |  |  |  |
| Back   |        |        |        |
| 1 percent Error |  |  |  |
| Total 318,000 |  |  |  |

Defendant had a permit for truck-crane no. 9709. However, the V.I.N. of the truck-crane being driven was 286G9454 B. The officer confiscated the permit: Said permit having been issued by the Department of Transportation for a vehicle weighing 168,000 pounds.

During the trial, the Commonwealth produced testimony from Trooper Nagurney that the truck-crane was stopped because the trooper thought that due to the *size* of the vehicle, it should have

been escorted either by another vehicle or by the State Police.

Our courts have repeatedly held that in a prosecution for an overweight violation, the Commonwealth must show:

(1) That the police officer had probable cause to stop the subject vehicle.

(2) That the arresting officer was in full uniform at the time of the arrest.

(3) That the members of the weighing team had completed the approved Department of Agriculture weights and measure course; and

(4) That the weight of the vehicle ascertained was a specific number of pounds in excess of the weight allowed by the Statute: Com. v. Murray, 460 Pa. 53, 331 A. 2d 414 (1975); Com. v. Buehler, 8 D. & C. 3d 796 (1979).

Applying this criteria to the case at bar, we find that the state trooper was in full uniform and driving a marked police cruiser. That the members of the weighing team all had taken the necessary course from the Department of Agriculture and that the two PennDOT employes were certified Weight Masters.

The officer testified that through his experience he knew that vehicles of this size needed a permit to operate on the highways and he thought that it should have been accompanied by other vehicles. It appears to the court that the officer had probable cause to stop the vehicle. Once the vehicle was stopped and the officer was shown a copy of a permit for vehicle no. 9709. Since the vehicle in question had V.I.N. no. 286G9454B, the officer confiscated the permit and called for a weighing team to weigh the vehicle.

Since the vehicle in question was not no. 9709, the officer acted properly in weighing the vehicle.

As already pointed out, the two PennDOT employes that came to the scene were certified Weight Masters. Further, the officer had also taken the prescribed Department of Agriculture course.

The fourth and final area the Commonwealth must show, is that the vehicle exceeded the prescribed weight. The officer and the weighing team described that they at first attempted to weigh the vehicle in question, by placing portable scales and weighing the rear portion of the vehicle. This method, known as multi-draft method, is commonly used in this Commonwealth and P.D. 75 Pa.C.S.A. §4981 allows for the use of stationary or portable scales. When the officer tried to weigh the vehicle, as described, the weight caused two of the scales to go over their calibrated weight, or maxed out. These two scales were removed from the operation. After consideration, it was decided to weigh each axle, and add the weights derived to reach the gross weight. Multi-drafting is described as, taking a vehicle and breaking it down into sections to weigh it, and adding up the weights to get the gross vehicle weight. This particular system was followed, each axle was weighed by placing portable scales under each tire and adding up the weights. The officer took into account that there is a one percent tolerance due to using the multi-draft method, and he reduced the ascertained weight by 3,213 pounds, leaving a total of $318,087.

During the trial, both sides produced experts as to the weight of the vehicles. The defense called a Mr. John Vroodland, a mechanical engineer. Mr. Vroodland, while being familiar with the vehicle, was mistaken as to just how the vehicle was weighed. Mr. Vroodland thought that the vehicle had been weighed by raising one side and leaving

the other side on the ground. He testified that if this was done, it would produce a false weight. It may be true that had this method been used, a false weight might result. However such a method was not used, and this court finds the multi-draft method as earlier described as being the proper method for weighing large vehicles. The Motor Vehicle Code does not require that the Commonwealth test the scales for accuracy, however, here the Commonwealth has shown that the scales used were certified accurate. The court is satisfied that the method used for weighing and the weight ascertained were correct.

At the trial, evidence as to how permits were issued for overweight vehicles was presented. An individual desiring a permit places a call to PennDOT, and gives the weight of the vehicle, the serial number and the route. Normally a badge check is issued. Thomas Stein, a PennDOT employe, testified that a permit was issued immediately, since Mackim—the vehicle owner, received permits for vehicle 9709. When asked how PennDOT determined the weight, Mr. Stein replied that they, PennDOT, relied on the customers' figures. When questioned about a permit for a vehicle weighing 320,000, Mr. Stein stated that such a permit would not be issued, without an extensive bridge review. Mr. Stein also testified that no permit was issued for vehicle no. 12869454B, the V.I.N. of the vehicle in question.

An employe of Mackim was called to testify about the discrepency in the permit number of the V.I.N. He stated that this permit 9709 was a number assigned by Mankim. He could not tell how the weight which was assigned the vehicle was determined and he was not sure if there was more than one vehicle with no. 9709.

After hearing testimony and reviewing briefs by respective counsels, the court makes the following findings of facts:

(1) That there was probably cause to stop the vehicle.

(2) That the officer was in full uniform and in a marked police cruiser.

(3) That the members of the weighing team had completed the requisite Dept. of Agriculture course in Weights and Measures.

(4) That the method of weighing used was proper.

(5) That the vehicle no. 2869454B did not have a validly issued permit to operate on the highways of this Commonwealth.

(6) That the statutory weight limit for this type vehicle was 73,820 pounds.

(7) That the vehicle in question weighed 318,087 lbs.

(8) That the fines were properly computed.

Accordingly, defendant is found guilty and the district judge's fines are reinstated.

## ORDER

And now, July 21, 1981 after taking testimony and reviewing briefs by representative counsels of defendant, defendant is found guilty and the district judge's fines reinstated by the court.