456 A.2d 1017

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Willie Lee BRIDGEMAN.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 1981.

Filed Feb. 18, 1983.

Steven Goldblatt, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Victor J. DiNubile, Jr., Philadelphia, for appellee.

Before CERCONE, President Judge, and WIEAND and HOFFMAN, JJ.

CERCONE, President Judge:

This is an appeal by the Commonwealth from a suppression order entered by the court below. The Commonwealth has averred that the suppression order substantially handicaps its case against appellee on burglary charges,[1] and has asserted that because of this blow to its case that this Court has jurisdiction to hear its appeal.[2] We find that the appeal is properly before us and proceed to its merits.

1. 18 Pa.C.S. § 3502.

2. The Commonwealth's brief contains the following statement of jurisdiction:

The jurisdiction of this Court is invoked pursuant to the Judicial Code, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 742.*

\* The lower court order granting defendant's motion to suppress the proceeds of the burglary with which defendant is charged will substantially handicap the Commonwealth in its prosecution of defendant. Therefore, this Commonwealth appeal is properly before the Court. *Commonwealth v. Wrona,* 442 Pa. 201 [275 A.2d 78]

The procedural history of the case, brief as it is, is as follows. Appellee was arrested in the early morning hours of October 2, 1979 in the East Falls section of Philadelphia by Officer Jeffrey Miller, with the assistance of another officer. At the time of his arrest appellee was the passenger in a vehicle driven by one Robert Lawrence. Appellee was charged with burglary, as well as with, theft, unauthorized use of an automobile and criminal conspiracy.[3] Appellee was duly arraigned, a preliminary hearing held and a timely motion to suppress the evidence filed. The suppression motion was heard January 28, 1980. At the close of the hearing the suppression court made findings of fact and conclusions of law pursuant to Rule 323(i) of the Pennsylvania Rules of Criminal Procedure. Those findings of fact and conclusions of law read in their entirety:

## FINDINGS OF FACT

No. 1. On October second 1979 about 3:50 a.m. Officer Jeffery Miller, Badge No. 7080, was proceeding west on Warden Drive, Philadelphia, while conducting patrol duty.

No. 2. While driving he observed a copper colored station wagon approximately of the year 1977–1978 coming down a driveway in the 3400 block of Warden Drive.

No. 3. The station wagon was occupied by two Negro males.

No. 4. The area was well lighted.

No. 5. Officer Miller grew up from the East Falls section of Philadelphia. He has done patrol duty in this sector for at least two years and he drives past this block almost every day.

No. 6. Officer Miller testified that to his knowledge there were not any Black families living in the 3400 block of Warden Drive.

(1971); *Commonwealth v. Bosurgi,* 411 Pa. 56 [190 A.2d 304, *cert. denied* 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149] (1963); *Commonwealth v. Martz,* 259 Pa.Superior Ct. 201 [393 A.2d 787] (1978).

**3.** 18 Pa.C.S. §§ 3921 (theft), 3928 (unauthorized use of an automobile), 903 criminal conspiracy.

No. 7. Officer Miller did not testify that he, personally, knew that there were not any Black families in the 3400 block of Warden Drive.

No. 8. He has seen this station wagon in the East Falls section and in the driveway of 3423 Warden Drive on prior occasions.

No. 9. As the station wagon left the driveway, Officer Miller followed it and stopped it at Vaux Street and Midvale Avenue in Philadelphia.

No. 10. He called the license number into the police radio and also called for backup.

No. 11. Officer Miller approached the station wagon and asked the driver, Robert Lawrence, for a driver's license and owner's card. Defendant Willie L. Bridgeman was seated in the front passenger seat.

No. 12. The driver and the Defendant Willie L. Bridgeman did not produce any owner's card.

No. 13. While standing in the street by the station wagon and questioning the two occupants of the vehicle, Officer Miller observed articles in the vehicle, that is, a TV set and clock in the rear seat and a clear glass jar containing quarters in the front seat.

No. 14. Officer Miller then asked the two occupants to step out of the vehicle.

No. 15. Defendant Willie L. Bridgeman and the driver, Robert Lawrence, were placed in the patrol wagon and transported to 3423 Warden Drive.

No. 16. The front screen on the porch of 3423 Warden Drive was cut, and the occupant of the residence, David Kurtz, was awakened.

No. 17. David Kurtz said the station wagon and the articles found inside of it were his.

## CONCLUSIONS OF LAW

No. 1. Stopping an automobile and detaining its occupants constitutes a seizure under the Fourth Amendment of the United States Constitution and must be reasonable.

No. 2. Stopping an automobile and detaining its occupants for the purpose of checking the driver's license and the vehicle registration is reasonable under the Fourteenth Amendment where there is articulatable [sic] and reasonable suspicion that either the vehicle or its occupants are subject to seizure for violation of the law.

No. 3. In this case there was not sufficient evidence to establish a reasonable suspicion that the occupants of the station wagon had committed a violation of law.

The instant case quite clearly falls within the purview of the Fourth and Fourteenth Amendments and their proscription against unreasonable searches and seizures. U.S. Const.amend. IV, amend. XIV. See *Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). *Cf., Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Moreover, because the case initially involved the investigatory stop of the occupants of a moving automobile, it implicates the well-known case of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny,[4] as well as the holdings of the Pennsylvania Supreme Court in *Commonwealth v. Murray*, 460 Pa. 53, 331 A.2d 414 (1975) and *Commonwealth v. Fassett*, 496 Pa. 529, 437 A.2d 1166 (1981).[5] *Cf., Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). And see, *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed. 612 (1972).

**4.** See, e.g. *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969); *Commonwealth v. Jones*, 474 Pa. 364, 378 A.2d 835, *cert. denied*, 435 U.S. 947, 98 S.Ct. 1533, 55 L.Ed.2d 546 (1977); *Commonwealth v. Vassiljev*, 218 Pa.Superior Ct. 215, 275 A.2d 852, (1971); *Commonwealth v. King*, 247 Pa.Superior Ct. 443, 372 A.2d 908 (1977).

**5.** In *Fassett*, supra the Pennsylvania Supreme Court reversed this Court's earlier ruling in the same case, reported under the same name at 260 Pa. Superior Ct. 323, 394 A.2d 573 (1978), on grounds not presented to this Court when the appeal was before us. The Supreme Court's determination of the case turned on the illegal seizure of appellant in violation of his Fourth Amendment rights, and his trial counsel's ineffectiveness in failing to move to suppress the evidence gleaned from the illegal seizure. See *Commonwealth v. Fassett*, 496 Pa. 529, 532 n. 2, 437 A.2d 1166, 1168 n. 2 (1981).

In *Commonwealth v. Murray*, supra, Justice Nix, writing for six of the seven justices (Justice Pomeroy concurred in the result) set out the applicable law thusly:

Where individuals proceeding in an automobile are forced to interrupt their travel at police direction, such action clearly amounts to a seizure of those individuals and the basis for that stop must meet Fourth Amendment standards. Traditionally, we have held that a seizure is not unreasonable under the Fourth Amendment where probable cause exists at the time of that seizure... The decisions of the United States Supreme Court and this Court have defined probable cause as being present where the facts and circumstances within the knowledge of the arresting officer and of which he has reasonable trustworthy information were sufficient to warrant a man of reasonable caution and belief to conclude that the suspect had committed or is committing a crime...

The United States Supreme Court in [*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] and in *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), has suggested that even in the absence of probable cause there may be, under certain circumstances, justification, for a limited intrusion upon the privacy of an individual... However, these decisions have made it clear that to justify the intrusion the police officer must be able to point to specific and articulable facts which taken together with rational inferences from those facts reasonably warranted the intrusion... Thus, it is also clear that an investigative stop of a moving vehicle to be valid must be based upon objective facts creating a reasonable suspicion that the detained motorist is presently involved in criminal activity.

*Id.* 460 Pa. at 60–61, 331 A.2d at 417–418.[6]

■ The "specific and articulable facts" on which Officer Miller made his decision to stop the automobile in which

6. In *Commonwealth v. Fassett*, 496 Pa. 529, 532, 437 A.2d 1166, 1168 (1981) Justice Flaherty, writing for a unanimous Supreme Court, had

appellant was riding are these: At 4:00 a.m., an officer who had grown up in the neighborhood and had patrolled the area for the past two years, observed two black males pulling a station wagon out of a driveway. The officer had often seen the car both parked in that driveway and being driven in the neighborhood. He was also aware that to the best of his knowledge, no blacks lived in that house or even on that block. The lateness of the hour coupled with the officer's knowledge of the people comprising the neighborhood raised the reasonable suspicion of unauthorized use. The officer was thus justified to take the limited step of stopping the car to check license and registration to confirm or deny that reasonable suspicion.

 After the appropriate and limited stop, the subsequent steps of the search cannot seriously be challenged. Neither the driver nor appellant could produce an owner's card or a reasonable explanation. A TV set, clock, and large jar of quarters were sitting on the car seats in plain view through the car windows. The officer was thus justified to ask the occupants out of the car to investigate further whether the goods were stolen. *See Commonwealth v. LeSeuer*, 252 Pa.Superior Ct. 498, 382 A.2d 127 (1977) (examining stereo equipment during stop); *Commonwealth v. Ellis*, 233 Pa.Superior Ct. 169, 335 A.2d 512 (1975) (taking adding machine during stop). Upon seeing other household goods piled in the car, combined with the earlier circumstances, the officer could properly take appellant and the driver back to the house where he had first seen the car. When he saw the porch screen cut, and heard the homeowner's report that the goods similar in nature to those found in the car were missing from his home the officer had probable cause for arrest. Accordingly, because the initial stop and subsequent search were justified, we reverse the lower court's suppression order and remand the case for trial.

Reversed and remanded for proceedings not inconsistent herewith. Jurisdiction relinquished.

occasion to quote this exact passage from Justice Nix's opinion in *Commonwealth v. Murray*, supra.