J-S63042-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARREN WILLIAM MARINO | : | No. 730 WDA 2018 |

Appeal from the Order Entered May 4, 2018
In the Court of Common Pleas of Mercer County Criminal Division at
No(s):  CP-43-CR-0001792-2017

BEFORE:   OTT, J., MURRAY, J., and STEVENS*, P.J.E.

DISSENTING MEMORANDUM BY STEVENS, P.J.E.:

**FILED: December 18, 2018**

The Majority opines this Court is bound by the subjective findings of the suppression court that Trooper Snyder's characterization of the object, when viewed along with the object itself and the mobile video recording, was "unreasonable."  **See** Majority Memorandum at *12.   Because the applicable standard of review is an objective one requiring this Court to determine whether an objectively reasonable police officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention, I respectfully dissent.

In **Holmes**, the Pennsylvania Supreme Court analyzed the reasonable suspicion standard as it relates to a vehicle stop based upon an officer's suspected violation of 75 Pa.C.S.A. § 4524(c) as follows:

---

\*   Former Justice specially assigned to the Superior Court.

As noted above, Section 6308(b) allows a police officer to conduct a vehicle stop if he has reasonable suspicion to believe that a violation of the Motor Vehicle Code is occurring or has occurred. [We have defined rea]sonable suspicion as follows:

Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, *a police officer must be able to point to "specific and articulable facts" leading him to suspect criminal activity is afoot.* [**Commonwealth v.**] **Melendez**, [544 Pa. 323, 676 A.2d 226], at 228 [ (1996) ] (citing *Terry* [*v. Ohio,* 392 U.S. 1], at 21 [88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ]). In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention. ***Commonwealth v. Cook***, 558 Pa. 50, 735 A.2d 673, 676 (1999) (citations omitted).

***Commonwealth v. Brown***, 606 Pa. 198, 996 A.2d 473, 477 (2010) (emphasis added). Thus, under the present version of Section 6308(b), in order to establish reasonable suspicion, an officer must be able to point to *specific and articulable facts* which led him to reasonably suspect a violation of the Motor Vehicle Code, in this case, Section 4524(c).

The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances. ***See Chase***, 599 Pa. at 101, 960 A.2d at 120 ("[r]easonable suspicion sufficient to stop a motorist must be viewed from the standpoint of an objectively reasonable police officer" (citing ***Ornelas v. United States***, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996))); ***Commonwealth v. Rogers***, 578 Pa. 127, 134, 849 A.2d 1185, 1189 (2004) (in determining whether police officer had reasonable suspicion, "the totality of the circumstances must be considered"). It is the duty of the suppression court to independently evaluate whether, under the particular facts of a case, an objectively reasonable police officer would have

reasonably suspected criminal activity was afoot. As the United States Supreme Court has explained:

> [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. And simple "'good faith on the part of the arresting officer is not enough.' * * * If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers and effects,' only in the discretion of the police.["]

*Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (citations and footnotes omitted).

This Court has recognized the concerns expressed by the Supreme Court in *Terry,* noting, for example, "before the government may single out one automobile to stop, there must be specific facts justifying this intrusion. To hold otherwise would be to give the police absolute, unreviewable discretion and authority to intrude into an individual's life for no cause whatsoever." *Commonwealth v. Swanger,* 453 Pa. 107, 112, 307 A.2d 875, 878 (1973); *see also Commonwealth v. Murray,* 460 Pa. 53, 331 A.2d 414 (1975) (same). Moreover, as we explained in *Cook, supra,* to demonstrate reasonable suspicion, an officer "must be able to point to specific and articulable facts and reasonable inferences drawn from those facts in light of the

officer's experience." 558 Pa. at 57, 735 A.2d at 677 (citation omitted). Thus, in order to establish reasonable suspicion, an officer must articulate specific facts *in addition to inferences based on those facts,* to support his belief that criminal activity was afoot.

As noted above, Section 4524(c) prohibits an individual from driving a motor vehicle "with any object or material hung from the inside rearview mirror or otherwise hung, placed or attached in such a position as to materially obstruct, obscure or impair the driver's vision through the front windshield or any manner as to constitute a safety hazard." 75 Pa.C.S.A. § 4524(c). Under its plain language, a driver is not in violation of the statute simply because he has an object hanging from the rearview mirror; rather, an essential element is that the object or material hanging from the mirror *materially* obstructs, obscures, or impairs the driver's vision. Thus, while we agree with the Commonwealth that the law does not require that police be able to identify the object before making a vehicle stop, *see* Commonwealth's Brief, at 10, in order to support a suppression court's finding that an officer possessed reasonable suspicion to believe that a violation of 75 Pa.C.S.A. § 4524(c) has occurred, the officer must articulate at least *some* fact or facts to support his inference or conclusion that the object materially impaired the driver's view.

*Commonwealth v. Holmes*, 609 Pa. 1, 11–15, 14 A.3d 89, 95–97 (2011) (emphasis in original) (footnotes omitted).

Under *Holmes*, while an officer need not be able to identify specifically the obstructing object prior to the stop, he or she must be able to articulate, at a minimum, some fact or facts to support his or her view that the object materially impaired the driver's view. There, the officer's sole testimony at the suppression hearing was that he had observed a black vehicle, at approximately 9:00 p.m., "traveling north on 315 with objects hanging from the rearview mirror which were obstructing the driver's view." *Holmes*, 609 Pa. at 4-5, 14 A.3d at 91.

The officer provided no testimony pertaining to the size or general description of the objects, nor did he indicate how they materially impaired the driver's view or created a safety hazard. As a result, our Supreme Court found that the officer's testimony had been insufficient to support the independent evaluation and subsequent finding by the suppression court that the officer had reasonable suspicion to stop the defendant's vehicle for a suspected violation of Section 4524(c). *Id*. 609 Pa. at 15, 14 A.3d at 97.

Instantly, Trooper Snyder testified that at approximately 4:00 p.m. on September 5, 2017, at which time it was still daylight, he was traveling one car length behind Marino's vehicle when he clearly observed a purple ball three to four inches in diameter and hanging two to three inches below the rearview mirror swinging freely, especially when the vehicle it a bump in the road. Based upon his observations, Trooper Snyder surmised the object "materially obstructed the driver's mirror-or view- through the front windshield" and initiated a traffic stop to investigate the suspected violation further and to issue a warning.

Unlike the officer in **Holmes** who provided no testimony regarding the size or general description of the hanging objects, or an explanation as to how the object impaired the driver's vision, Trooper Snyder testified regarding the object's size, color, and its location on the rearview mirror. He further related his inference that its swinging motion would materially obstruct the driver's

view through the front windshield in violation of Section 4524(c) so as to justify his stop of Appellee's vehicle.

Thus, Trooper Snyder had specific and articulable facts prior to the stop sufficient to form a reasonable suspicion that Marino was violating the Motor Vehicle Code. This justified an investigatory detention to allow Trooper Snyder to investigate further. Because the traffic stop was supported by reasonable suspicion, the trial court erred in granting Marino's suppression motion.

While the suppression court specifically identified reasonable suspicion as the applicable legal standard, the court admitted it had made its "own determination" as to the reasonableness of Trooper Snyder's belief at the time he stopped Marino's vehicle. Suppression Court Opinion, filed 5/14/18, at 2-3. In doing so, the court essentially ignored the fact that "the fundamental inquiry of a reviewing court must be an objective one, namely whether the facts available to the officer at the moment of the [stop] warrant a man of reasonable caution in the belief that the action taken was appropriate" under the totality of the circumstances. *Commonwealth v. Reppert*, 814 A.2d 1196, 1204 (Pa.Super. 2002).

Instead, the suppression court supplanted this requisite legal standard with it with its own, subjective conclusions drawn from its observations of the Mobile Video Recording and the object as it appeared in isolation in the courtroom setting to conclude that the object herein created "far less an obstruction than in [*Commonwealth v.] Shabazz* [18 A.3d 1217 (Pa.Super.

2011)]," because it "hung by itself and was too small to materially impair [Marino's] ability to drive the vehicle safely" and that Trooper Snyder, "could have observed, at most, a minor obstruction." Suppression Court Opinion and Order, 5/4/18, at 4-5; Suppression Court Opinion, 5/14/18, at 3.[1] However, the way the object appeared in court or on the MVR recording is not indicative of how Officer Snyder observed it swaying from Marino's rearview mirror on September 5, 2017, at which time he deemed it to be a material obstruction to Marino's view through the front windshield.

The suppression court acknowledged that it had a "very complete record," that Trooper Snyder "initiated the traffic stop in broad daylight and was able to clearly see the object hanging from [Marino's] rearview mirror," and that he "was able to accurately describe the object and state that he believed the object created an obstruction to [Marino's] view." Suppression Court Opinion and Order, 5/4/18, at 4. **See also** Suppression Court Opinion, 5/14/18, at 2. As the Commonwealth observes, if it attempts to convict Marino of the windshield violation, the degree of obstruction will be significant in determining guilt or innocence; however, "[i]t is not the degree of obstruction that provides reasonable suspicion, as the trial court has assumed, but Trooper Snyder's own observations regarding a possible material obstruction." Commonwealth's Brief at 24.

---

[1] **See** Majority Memorandum at *8 for discussion of **Shabazz**.

Stated another way, the ultimate degree to which Marino's view actually had been impaired is not determinative, for the legal standard is based upon an officer's specific and articulable observations and resultant reasonable belief further investigation is necessary to justify a stop. Indeed, "[a] finding of reasonable suspicion does not demand 'a meticulously accurate appraisal' of the facts. [E]ven stops based on factual mistakes generally are constitutional if the mistake is objectively reasonable." **Commonwealth v. Chase**, 599 Pa. 80, 102, 960 A.2d 108, 120 (2008) (citations and quotations omitted).

In light of the foregoing, I would find the facts of this case to be analogous to those in **Shabazz** and hold that the traffic stop of Marino's vehicle was legal. Accordingly, I would conclude that the trial court erred when it granted the Omnibus Motion to Suppress and reverse the Order entered on May 4, 2018.